[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Financial problems frequently lead to marital breakdown. A compelling example would be the present case in which excessive spending, the birth of three children, a move to a larger, costly residence, and the deterioration of a business put substantial financial strain on the marriage. Soon there was constant quarreling, recriminations, and then the couple was pulled into the dangerous vortex of divorce.
The parties were married on September 2, 1990, a total of 12 years. On June 4, 2001, the wife filed a complaint claiming a dissolution of marriage, custody, support, alimony, an assignment of the husband's estate, an equitable distribution of assets, counsel fees and other equitable relief. They continued to live together after the filing until September of this year when the husband moved to his parent's home. The husband did not file an answer and cross-complaint but was fully heard on all issues. Both parties were represented by able counsel throughout four days of trial.
The wife is 38 years of age, in good health, and has a bachelor's degree in business from Southern Connecticut State University. She currently is attending Tunxis Community College in hopes of rasing her cumulative point average. If she is successful, she plans to enroll in a two-year University of Bridgeport program to become a certified teacher. In the early years of the marriage she was employed full time, and from time to time helped her husband in his business, but essentially was a homemaker since the birth of her first child. She also volunteers at her children's school. While her long-term goals and desire to be with her children are admirable, the economic facts of life will soon dictate that she find employment. At this time, no income capacity is found.
The husband is 37 years of age, in good health, and has a bachelor's degree in accounting from Southern Connecticut State University. Since a very young age he has been in the restaurant business, at first working in his family's well known establishment, the Seven Villages Restaurant, CT Page 16544 and since 1996 in his own business, the Bank Street Grill. Unfortunately, the Grill and related business real estate have foundered in recent times. Bankruptcy could be on the horizon. While there were allegations, including some evidence, that unreported cash was taken from the business, the testimony as to amount was in conflict. Neither is it clear that the cash taken will be unreported as the husband has not filed IRS returns for the past two years. However, it is fair to find that he has an income capacity at least equal to the combined salaries which the business pays to the parties ($59,360.00).
Three children were born to the parties, Alexis, born April 30, 1994, Nicholas, born July 23, 1995, and Christina, born Sept 20, 1997. All the children are in good health and are enrolled in school, the youngest in a full day kindergarten program. To the considerable credit of both parties, they arrived at a parenting agreement which was reviewed by the court, found to be in the best interest of the children, and is incorporated herein by reference.
Neither party had any significant assets which they brought to the marriage. Both parties had personal injury actions which were settled and the funds put into the husband's business and various other family obligations. Testimony indicated, although there was no documentary evidence, that the wife received approximately $25,000.00 and the husband approximately $26,500.00. of particular note is the fact that the husband's parents and other family members made significant contributions to the parties, their business, residences, and living expenses over the years. Even today, the husband is being supported to a large measure by his family.
The most viable asset owned is the marital residence in Wolcott which has a stipulated fair market value of $282,500.00, a mortgage balance $162,702.00, and an equity of $119,798.00. It is occupied by the wife who wishes to remain in the residence with the three minor children.
A second asset is SMD Enterprises, Inc., a corporation owned solely by the husband, which holds title to property located at 68-70 Bank Street in Waterbury. The property houses the husband's restaurant business as well as some upstairs tenants. Much of the building is vacant. Competing testimony indicated its fair market value to be $144,000.00 by the husband's appraiser and $304,000.00 by the wife's appraiser. A middle ground would seem appropriate. However, it is all rather academic because the husband's father, who holds the mortgage which has not been paid for many months, has filed a foreclosure action claiming a past due amount of $139,943.84. In addition, there are more than $79,000.00 in unpaid bills related to the property including the City of Waterbury which is owed CT Page 16545 four years in back taxes and water bills. While an accurate accounting was not presented, it is doubtful that there is any equity in the property.
The third major asset is a restaurant corporation, owned solely by the husband, known as the Bank Street Grill. The business was at first profitable but has declined steadily due to the advent of the new mall, deterioration of the downtown area, and a general decline in economic conditions. The wife's appraiser testified that he believed its fair market value to be $109,000.00. The husband did not produce an appraiser but the accountant for the business painted a gloomy financial picture of steady losses. For example, the business has not paid payroll, unemployment, and sales and use taxes since 1999. The total of said taxes, verified by the accountant, is $42,795.48 which, as trust funds, are not dischargeable in bankruptcy. In addition, there are a variety of other unpaid liabilities totaling $31,726.25. Sales have been steadily declining. On his financial affidavit, the husband lists the value of corporate tangible assets at $10,000.00. While an accurate accounting was not presented, it is doubtful, baring a rapid turnaround in the economy and improvement of the downtown area, that there is any equity in the business.
As to personal liabilities, the husband listed a total of $56,703.69 including $10,000.00 for attorneys fees for this action. The wife listed $29,150.00 including $7,500.00 in attorneys' fees for this action. That is a staggering total of $85,853.69 in short term, personal, unsecured debt, especially considering that last year the parties had gross income of $59,360.00.
It would serve no useful purpose to chronicle the causes for the breakdown of this marriage which appears to be irretrievable. Suffice it to say, that other than money, the causes were minor. There was no adultery, abuse, or addictions as often found in collapsed marriages. Rather, it seemed that financial anxiety was central to the friction between the parties. They quarreled constantly over money and the lack thereof. The husband's dream of building a thriving restaurant business soured when the general economy slowed, a new mall opened, and downtown Waterbury experienced decline. At the very same time, with the husband working 60 to 70 hours per week, there arose the demands of three young children and a large new home in the suburbs.
The wife claimed, with some justification, that the husband was verbally abusive, constantly belittled her, and sided with his mother over her. She also stated that he was unfaithful, an allegation which was unsubstantiated. The husband claimed, with some justification, that the CT Page 16546 wife was unsympathetic to the financial problems which the family experienced and the stress it caused him. It appeared to the court that the wife did not appreciate the husband's many contributions to the marriage, nor did the husband appreciate the wife's many contributions. One must pause to wonder, what would have happened if the parties had put as much energy into resolving their marital problems as they put into the divorce battle.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
DISSOLUTION OF MARRIAGE
The marriage is dissolved on the grounds of an irretrievable breakdown.
CUSTODY AND VISITATION
The agreement of the parties regarding custody and visitation issues, dated October 29, 2002, was reviewed by the court and found to be in the best interests of the minor children. Its terms and conditions are incorporated herein by reference.
CHILD SUPPORT
The husband is ordered to pay to the wife child support in the amount of $334.00 per week in accordance with the child support guidelines. Said payment is to be made pursuant to a contingent wage withholding order.
LIFE INSURANCE
The husband shall name the wife and minor children equal beneficiaries on his Minnesota Mutual Life Insurance Company policy in the amount of $400,000.00 until he no longer has any financial obligation for support or alimony. When alimony terminates, he shall have the option of reducing his remaining obligation to the children by $100,000.00. Likewise, he may reduce the obligation by $100,000.00 as each child is emancipated. Satisfactory evidence of the proper maintenance of the insurance shall be given to the wife upon reasonable request. This paragraph shall be subject to modification. CT Page 16547
MEDICAL INSURANCE
The husband shall maintain the medical insurance he now has in force for the benefit of the minor children. All unreimbursed expenses shall be shared in accordance with the child support guidelines which is currently 40% by the wife and 60% by the husband. This paragraph shall be subject to modification.
Each party shall be solely responsible for their own medical insurance and un-reimbursed expenses.
REAL ESTATE
The husband shall immediately quit-claim to the wife all of his right title and interest in the marital residence located at 8 Rogers Road, Wolcott subject to the outstanding mortgage which the wife shall assume and pay. She shall save him harmless from any and all claims arising out of said mortgage. The wife shall cause the husband's name to be removed from any liability on said mortgage upon the happening of the first of the following events: her remarriage, cohabitation, removal from the premises as her principal place of residence, a mortgage payment delinquency of more than 30 days which adversely affects the husband's credit, or by December 31, 2007: In the event she fails to do so, the house shall be immediately listed for sale and sold to the buyer with the first reasonable offer.
ALIMONY
The husband shall pay to the wife periodic alimony of $250.00 per week commencing January 1, 2003 pursuant to a contingent wage withholding order. Said alimony payment shall terminate upon the death of either party, the wife's remarriage, her cohabitation, or on December 31, 2007.
PERSONAL PROPERTY
All of the furniture and furnishings located in the marital residence shall be equitably divided by January 31, 2003. If the parties are unable to accomplish the division they shall report to the Family Service Unit of the court for mediation during the month of February. If mediation is unsuccessful, the issue is to be brought to the court for determination during the month of March. After March 31, 2003, the parties shall retain all items in their possession without claim from the other.
The wife shall retain the 1997 Plymouth Grand Voyager subject to the outstanding loan which she shall assume and pay saving the husband CT Page 16548 harmless from any claims regarding same.
The husband shall retain the 1995 Jeep Cherokee subject to any outstanding loan which he shall assume and pay saving the wife harmless from any claims regarding same.
The husband shall retain the Merck, ORGK, and TTRIF stock.
The husband shall retain his interest in the Bank Street Grill and SMD Enterprises corporations.
The wife shall retain her IRS and State of Connecticut tax refunds in the approximate amount of $3,500.00.
The wife shall retain her personal injury claim.
Each party shall retain their own checking and savings accounts.
LIABILITIES
Each party shall be responsible for their own liabilities as shown on their respective financial affidavits.
COUNSEL FEES
No counsel fees are awarded.
TAXES
The husband shall be permitted to take all three minor children as dependents on his Internal Revenue Service tax returns. This order shall be subject to modification as soon as the wife is employed full time or when it can be demonstrated that the exemptions will have some tax benefit to her.
By April 15 of each year, until there is no longer any financial obligation for child support or alimony, the parties shall exchange their complete IRS returns in order to determine that the payments are appropriate under the circumstances then existing.
EDUCATIONAL SUPPORT ORDER
Either party may petition the court for a post-judgement educational support order pursuant to statute. CT Page 16549
MISCELLANEOUS
Each party shall sign any necessary documents to effectuate the orders contained herein.
All pendente lite orders are to be made current through December 31, 2002.
Plaintiff's counsel shall prepare the judgment file, have it certified by defendant's counsel, and file it with the court within 30 days.
___________________, J. CUTSUMPAS CT Page 16550